# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 13, 2020        Decided July 13, 2021

No. 19-7168

GREGORY SELDEN,
APPELLANT

v.

AIRBNB, INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00933)

*Ikechukwu Emejuru* argued the cause for appellant. With him on the briefs was *Andrew Nyombi*.

*Sean Marotta* argued the cause for appellee. With him on the brief were *Michelle A. Kisloff* and *Matthew J. Higgins*.

Before: KATSAS and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: This case involves the arbitrability of discrimination claims brought against Airbnb, an online home

rental platform. When Gregory Selden signed up for Airbnb, he was presented with a sign-in wrap—a webpage that informs the user he is agreeing to certain terms by signing up. Airbnb's Terms of Service included a clause requiring that all disputes be resolved by arbitration. The district court held that Selden agreed to those Terms of Service by signing up for Airbnb and so compelled arbitration of his claims. The arbitrator ruled in favor of Airbnb and the district court refused to vacate the arbitration award. On appeal, Selden argues that he did not agree to arbitrate because Airbnb's sign-up screen failed to put him on notice of the arbitration clause in its Terms of Service and regardless, that his discrimination claims were not arbitrable. He also maintains the arbitrator committed misconduct by failing to provide for sufficient discovery and by refusing to consider his expert report.

We affirm. Airbnb's sign-up screen put Selden on reasonable notice that by signing up to use the platform he agreed to Airbnb's Terms of Service; and Selden's discrimination claims were arbitrable. Selden also failed to establish that he was prejudiced by the arbitrator's alleged misconduct.

## I.

Airbnb provides an online "community marketplace" for people to list and rent accommodations around the world. A "host" with a property to rent creates a listing on Airbnb's website. A "guest" who wants to rent a property can sign up and use Airbnb's marketplace to communicate directly with a property's host to request a booking. If the host accepts, the host and guest enter an agreement. Airbnb facilitates the marketplace for property rentals and payment for bookings, but is otherwise not involved in the interaction between a host and guest. Airbnb does not operate the accommodations, set the

price, or determine availability. Those decisions are made exclusively by a host, who decides whether to rent his property and on what terms.

To use Airbnb, a new user must create an account and profile through Airbnb's website. During the time relevant to this suit, an iPhone user would see this screen when signing up:



J.A. 231.

The screen presents three options to sign up for Airbnb: using a Facebook account, a Google account, or an email.

Directly below these options, the screen states: "By signing up, I agree to Airbnb's Terms of Service, Privacy Policy, Guest Refund Policy, and Host Guarantee Terms." J.A. 231. The terms and policies appear in red and are hyperlinks to the relevant document.

The Terms of Service begin with a warning, in all caps, that they "contain important information regarding [a user's] legal rights, remedies and obligations," including "various limitations and exclusions, a clause that governs the jurisdiction and venue of disputes, and obligations to comply with applicable laws and regulations." J.A. 69 (capitalization altered). The "Dispute Resolution" section includes an arbitration clause in which, as relevant here, a user and Airbnb "agree that any dispute, claim or controversy arising out of or relating to these Terms … or to the use of the Services or use of the Site … will be settled by binding arbitration."[1] J.A. 83.

---

[1] The arbitration clause provides in full:

> You and Airbnb agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Services or use of the Site or Application (collectively, "Disputes") will be settled by binding arbitration, except that each party retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights. You acknowledge and agree that you and Airbnb are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Further, unless both you and Airbnb otherwise agree

This section also includes a class action waiver in which a user and Airbnb "agree that [they] are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding." J.A. 83. Any arbitration would be administered by the American Arbitration Association ("AAA") in accordance with its rules. California law governs any disputes.

This case arose when Gregory Selden created an Airbnb account in March 2015. When Selden went to the sign-up page on his iPhone, he chose to sign up with his Facebook account. At the time, Airbnb required a user to provide a profile picture, which hosts could view.[2] Selden's Facebook profile picture became his Airbnb profile picture.

After Selden signed up for Airbnb, he inquired about a listing in Philadelphia to rent a single room in a property occupied by the owner. The host told Selden the property was not available. Later that day, Selden noticed the property was still listed. Selden, an African American man, suspected the

---

> in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this specific paragraph is held unenforceable, then the entirety of this "Dispute Resolution" section will be deemed void. Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of these Terms.

J.A. 83 (emphasis omitted).

[2] Airbnb has since changed this policy and no profile picture is now required.

host had denied his request because of his race, which the host could see from Selden's profile picture.

Two days later, Selden created two fake Airbnb accounts with profile pictures of white individuals. Selden then used his fake accounts to request renting the same property for the same dates. According to Selden, the host accepted both requests. Selden posted his claims of discrimination on social media with the hashtag "#airbnbwhileblack," which went viral.

Selden filed a complaint in the District Court for the District of Columbia against Airbnb asserting claims under three statutes. First, he alleged that Airbnb violated Title II of the Civil Rights Act of 1964, Pub. L. No. 88-352, § 201, 78 Stat. 241, 243 (codified at 42 U.S.C. § 2000a), which prohibits discrimination on the basis of race in public accommodations.[3] Second, he alleged that Airbnb violated the Civil Rights Act of 1866, 14 Stat. 27 (codified as amended at 42 U.S.C. § 1981), which prohibits discrimination on the basis of race in the formation of contracts. Third, he alleged that Airbnb violated the Fair Housing Act, Pub. L. No. 90-284, § 804, 82 Stat. 73, 81 (1968) (codified as amended at 42 U.S.C. § 3604), which prohibits discrimination on the basis of race in the sale or rental of housing. To support these discrimination claims, Selden asserted that two Airbnb policies had a disparate impact on African Americans: its photo policy, requiring a user to provide a profile picture that hosts could view, and its true name policy, requiring a user to use his true name that hosts could see.

---

[3] A "public accommodation" related to lodging is defined as "any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence." 42 U.S.C. § 2000a(b)(1).

Selden asserted his discrimination claims individually and on behalf of a class, seeking damages and injunctive relief.

Based on the arbitration clause in the Terms of Service, the district court granted Airbnb's motion to compel arbitration. The district court determined that Airbnb's sign-up screen placed Selden on reasonable notice of the Terms of Service, and therefore he agreed to the Terms when he signed up. Concluding that Selden's discrimination claims were arbitrable, the district court ordered the parties to arbitrate and stayed the case pending the arbitration.

Selden filed an arbitration demand with the AAA. The arbitrator first ordered a voluntary document exchange and explained that he would consider subsequent formal discovery requests. Selden later requested interrogatories and depositions, but the parties instead agreed to try mediation, which failed. A month later, the arbitrator approved of the parties sending document requests but also explained that he was willing to consider renewed requests for additional discovery after completing the document production. Selden's counsel followed up with an email expressly "reserv[ing] the right to seek testimony by way of depositions … prior to [the] close of discovery," but never requested any interrogatories or depositions prior to the close of discovery.

Airbnb filed a dispositive motion to have Selden's claims dismissed. Selden opposed the motion, in part by submitting an expert report from Dr. Dan Svirsky. In his report, Dr. Svirsky explained a study he coauthored about racial discrimination in the sharing economy and posited that Airbnb's true name policy had a disparate impact on African Americans. During arguments, Selden requested depositions of Airbnb employees before the arbitrator decided the motion. A few days later, the arbitrator granted Airbnb's motion.

Although the arbitrator noted that the allegations against the *host* were "serious" and "involve[d] totally inappropriate … conduct," the arbitrator dismissed Selden's claims against Airbnb as a matter of law. J.A. 320. He determined that the host's property—a room in an owner-occupied, single-family residence—was not a public accommodation, so it did not fall under the protection of Title II. He also concluded that Airbnb's online marketplace was not a public accommodation. Relatedly, a single-family residence like the host's property is not a dwelling that qualifies for the Fair Housing Act's protection. *See* 42 U.S.C. § 3603(b)(1). Because Airbnb was not a party to the contract between Selden and the host, and had no agency relationship with the host, the Civil Rights Act of 1866 did not apply. The arbitrator entered an award in favor of Airbnb.

Selden then filed a motion to vacate the arbitrator's award in the district court, arguing the arbitrator erred by denying his discovery requests for interrogatories and depositions and by ignoring his expert report. According to Selden, these errors amounted to misconduct and a refusal to consider evidence, justifying vacatur of the award.

The district court denied the motion. As to the discovery requests, the court determined the error was Selden's, because he failed to request interrogatories or depositions prior to the close of discovery. With respect to the expert report, the court held that Selden failed to show the arbitrator refused to consider it because the arbitrator permitted Selden to submit the report. In any event, Selden failed to establish that he was prejudiced by the lack of discovery because the arbitrator's decision was based on the legal conclusion that neither the host's property nor Airbnb's online platform fell within the statutes he invoked. The district court refused to vacate the arbitration award and dismissed Selden's case.

On appeal, Selden challenges both the district court's order of arbitration and its denial of his motion to vacate the arbitration award. We have jurisdiction to review the district court's order compelling arbitration and its refusal to vacate the arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(3) (providing for review of "a final decision with respect to an arbitration"). *See also Republic of Argentina v. AWG Grp. Ltd.*, 894 F.3d 327, 332 (D.C. Cir. 2018). We review these orders de novo. *See Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008); *Nat'l R.R. Passenger Corp. v. ExpressTrak, LLC*, 330 F.3d 523, 529 (D.C. Cir. 2003).

## II.

Selden contends that the district court erred by ordering arbitration of his discrimination claims. He maintains that he did not agree to arbitration because Airbnb's sign-up screen failed to give him reasonable notice of the Terms of Service. Selden also maintains that his statutory claims were not arbitrable. We take each argument in turn.

## A.

We hold that Selden agreed to arbitrate his claims against Airbnb because he had reasonable notice of the Terms of Service and the arbitration clause therein.

Under the FAA, an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA "reflect[s] both a liberal federal policy favoring

arbitration and the fundamental principle that arbitration is a matter of contract." *Id*. (cleaned up). We therefore "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id*. (cleaned up).

Because arbitration is a contractual matter, we must first determine whether the parties have agreed to arbitrate by looking to state contract law. The district court applied California law as to contract formation, and the parties have not taken issue with that decision on appeal. Finding no apparent error in that choice, we apply California law as well. *See BWX Elecs., Inc. v. Control Data Corp.*, 929 F.2d 707, 710 (D.C. Cir. 1991).

Under California law, "[a]n essential element of any contract is consent," and that "consent must be mutual." *Monster Energy Co. v. Schechter*, 444 P.3d 97, 102 (Cal. 2019) (cleaned up). Whether mutual consent exists "is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Id*. (cleaned up). An offeree may outwardly manifest consent by agreeing to a contract's terms in writing or orally. *See Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (Ct. App. 1972). But "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id*. at 993. Even if an offeree lacked actual notice of the terms, however, he may be bound if he manifested his consent and "a reasonably prudent user would [have] be[en] on inquiry notice of the terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017) (applying California law). Inquiry notice, also called constructive notice, turns on "whether reasonable people in the position of the parties would have known about the terms and the conduct that

would be required to assent to them." *Id*. at 77 (citation and quotation marks omitted). It depends on "the clarity and conspicuousness" of the terms. *Id*. at 75 (cleaned up); *accord Windsor Mills*, 25 Cal. App. 3d at 993.

Selden used his Facebook account to sign in to Airbnb on a screen that stated signing up constituted agreement to the Terms of Service. This type of screen is known as "sign-in wrap," a website "designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 399 (E.D.N.Y. 2015). In other words, a sign-in wrap bundles signing up for a service with agreement to the website's contractual terms.

To determine whether a sign-in wrap provides reasonable notice of the terms to which the user is agreeing requires a "fact-intensive inquiry." *Meyer*, 868 F.3d at 76. We look to the "layout and language of the site" to decide whether it would provide a "reasonably prudent smartphone user" with "reasonable notice that a click"—i.e., signing up—"will manifest assent to an agreement." *Id*. at 75, 77 (cleaned up).

We conclude that Airbnb's sign-up screen placed Selden on reasonable notice that by signing up he agreed to the Terms of Service. Airbnb's screen used a simple design. It had three buttons allowing users to sign up using Facebook, Google, or email. Directly below the three buttons, it stated: "By signing up, I agree to Airbnb's Terms of Service, Privacy Policy, Guest Refund Policy, and Host Guarantee Terms." J.A. 231. These terms and policies appeared in red text against a white background and were hyperlinked to the full policies. Moreover, the sign-in appeared on a single screen for an iPhone user like Selden and required no scrolling to see the notice of the Terms of Service. As the district court explained, Airbnb's

notice was "clearly legible, appropriately sized, and unobscured by other visual elements." J.A. 222.

To resist this conclusion, Selden argues he lacked reasonable notice and therefore never agreed to the arbitration clause within the Terms of Service. Selden first contends that, because "Terms of Service" appeared in red text, a reasonable user would not know they were hyperlinked because hyperlinks are ordinarily blue and underlined. While it is true that hyperlinked text is often underlined and highlighted in blue, this is not a necessary requirement for indicating a hyperlink.

Reasonable notice does not turn on where the hyperlinked text falls on the color wheel; rather we consider whether the text was conspicuous. Here, the red terms were conspicuous and put a reasonable user on notice that they were hyperlinks. The only red text in the warning indicated the legal policies, which were set off from the surrounding black text. *See Wickberg v. Lyft, Inc.*, 356 F. Supp. 3d 179, 184 (D. Mass. 2018) (explaining a pink phrase makes it "distinguishable on the screen"). Airbnb's screen drew a user's attention to the hyperlinked terms, unlike the screen in *Cullinane v. Uber Technologies, Incorporated*, 893 F.3d 53, 57, 64 (1st Cir. 2018), on which the hyperlinked terms appeared in white next to light gray text and therefore were not conspicuous.

Moreover, the sign-up screen elsewhere used red to indicate a hyperlink. At the bottom of the sign-up screen, "Log in" appeared in red in the prompt: "Already an Airbnb member? Log in." J.A. 231. Any reasonable smartphone user would understand that clicking "Log in" would send him to Airbnb's login page. The prompt to "Log in," as well as the legal policies, appeared in red, which clearly and conspicuously indicated the Terms of Service were a hyperlink.

13

Selden next argues that the sign-up screen's layout of three buttons with different logos and color schemes undercuts the reasonableness of the notice. In particular, Selden suggests that because of the distance between the button he selected, "Sign up with Facebook," and Airbnb's Terms of Service, he lacked reasonable notice that he was agreeing to Airbnb's terms.

We are unpersuaded. The three buttons plainly provided options for how a user could sign up for Airbnb because each began "Sign up with" and then provided a method for doing so. Directly below these three options, Airbnb informed the user that "By signing up, I agree to Airbnb's Terms of Service." J.A. 231. The buttons appeared in close proximity to the notice and on a single screen. A reasonable person would know that, by signing up, he would be agreeing to Airbnb's terms even if he used his Facebook account to sign up.

Selden finally argues that Airbnb's sign-up screen is not "appealing to the eye" or "easy to follow," so the design makes the Terms of Service inconspicuous. Selden Br. 23. Aesthetic judgments aside, for legal purposes, Airbnb's sign-up screen incorporates a simple, streamlined design that sufficiently draws a user's attention to its Terms of Service. The screen provided reasonable notice to Selden that, by signing up, he was agreeing to Airbnb's Terms of Service. Whether Selden read those Terms is irrelevant because he was on inquiry notice. *See Meyer*, 868 F.3d at 79 (explaining that regardless of whether any users "bother reading the … terms, that is the choice the user makes; the user is still on inquiry notice"). We conclude that Selden agreed to the Terms of Service and the arbitration clause contained therein.

14

B.

We next consider whether Selden's discrimination claims were arbitrable. Selden argues that Title II of the Civil Rights Act prohibits arbitration of claims brought under it and that it was unconscionable to require him to arbitrate his Fair Housing Act claim.[4] We hold that all of Selden's claims were subject to arbitration.

1.

Whether Title II claims are arbitrable appears to be a matter of first impression. The FAA, "standing alone, … mandates enforcement of agreements to arbitrate statutory claims," but "[l]ike any statutory directive," its "mandate may be overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Congress may determine by statute that some claims are not subject to arbitration. In light of the strong policy in favor of arbitration, however, we require a clear statement that individuals may not agree to arbitrate specific statutory rights. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626

---

[4] Selden also argued for the first time on appeal that California law renders the Terms of Service's arbitration clause unenforceable as to his Title II claim. By failing to raise this argument below, Selden has forfeited it. *See Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009). Relying on *McGill v. Citibank, North America*, 393 P.3d 85 (Cal. 2017), Selden contends that there was an intervening change in California law that excuses his forfeiture. In *McGill*, however, the California Supreme Court merely applied an established principle to claims brought under the California False Advertising Law. *See id.* at 89–94 (discussing *Cruz v. PacifiCare Health Sys.*, 66 P.3d 1157 (Cal. 2003); *Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67 (Cal. 1999)). There was thus no intervening change in law that excused Selden's forfeiture.

(2018); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 103 (2012).

Nothing in the text or structure of Title II forecloses arbitration. Subsection (a) provides that district courts "shall have jurisdiction of proceedings instituted pursuant to this subchapter and shall exercise the same without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law." 42 U.S.C. § 2000a-6(a). This provision simply grants jurisdiction to district courts over Title II claims. A statutory grant of jurisdiction "neither guarantees a right to a federal court trial nor forbids arbitration as an alternate forum." *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 678 (5th Cir. 2006) (interpreting a Uniformed Services Employment and Reemployment Rights Act provision providing that "the district courts of the United States shall have jurisdiction of the action" and holding that those claims are arbitrable); *see also Epic. Sys.*, 138 S. Ct. at 1626 (explaining that "Congress has spoken often and clearly to the procedures for resolving [a claim] in statute after statute" but that does not limit arbitration); *CompuCredit Corp.*, 565 U.S. at 100–01 (explaining that "the mere formulation of the cause of action in this standard fashion" cannot establish a contrary congressional command prohibiting arbitration).

Selden maintains that Title II forecloses arbitration because subsection (a) states that a claimant need not exhaust "other remedies that may be provided by law." Selden argues a claimant need not exhaust arbitration before proceeding in a district court. But arbitration is not a "remedy" provided by law in any ordinary meaning of that term.

Although "remedy" may be susceptible to a range of meanings, "[a]ll meanings of 'remedy' have one thing in

common, namely, that that which is referred to as a remedy is represented as a cure." Peter Birks, *Rights, Wrongs, & Remedies*, 20 OXFORD J. LEGAL STUD. 1, 9 (2000). Arbitration, however, is not a cure to a claim; it is a dispute-resolution process through which a litigant may obtain a cure.[5] "By agreeing to arbitrate a statutory claim," a party "only submits to [its] resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Arbitration provides "an alternate forum" for the resolution of claims, but the forum is not a remedy. *See Garrett*, 449 F.3d at 678. Subsection (a) makes no mention of arbitration—it simply excuses a Title II plaintiff from exhausting his claim before filing suit and evinces no congressional command to preclude an arbitral forum.

Selden also argues that reading subsections (a) and (b) together suggests that federal courts are the "exclusive means" of enforcing the rights provided by Title II. Subsection (b) provides that "[t]he remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter." 42 U.S.C. § 2000a-6(b). As we have explained, arbitration is not a remedy within the meaning of subsection (a), and similarly, it does not qualify as a "remed[y] provided in this subchapter" under subsection (b). We cannot take two subsections, neither of which addresses arbitration, and mash them together to find that arbitration is prohibited. If Congress wanted to prohibit arbitration of Title II claims, it

---

[5] To be sure, the Supreme Court has described arbitration as a "remedy," but "only when the parties have created such a procedure in the collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 196 n.17 (1967). *Vaca* concerned an employee's complaint that his union had wrongfully failed to arbitrate, and the Court considered whether arbitration should be ordered as the remedy to the employee's complaint. *See id.* at 196.

could have done so in a "less obtuse" manner. *CompuCredit Corp.*, 565 U.S. at 103. We decline to find a limitation on arbitration unless a statute sets forth such limitation with "clarity." *Id.* "Congress has … shown that it knows how to override the Arbitration Act when it wishes." *Epic Sys.*, 138 S. Ct. at 1626 (collecting statutes); *id.* at 1624 (explaining the "strong presumption that repeals by implication are disfavored") (cleaned up). Title II does not prohibit arbitration and we cannot pick up the legislative pen to write a prohibition on arbitration into the statute.

Nothing in Title II overcomes the FAA requirement to enforce agreements to arbitrate. *See Shearson/Am. Express*, 482 U.S. at 226–27. The district court thus properly compelled arbitration of Selden's Title II claim.

2.

Selden argues that his claim under the Fair Housing Act, 42 U.S.C. § 3601, should not have been arbitrated because Airbnb's Terms of Service are unconscionable. In particular, Selden contends that the Terms of Service's class action waiver "effectively forecloses" his ability to establish his disparate impact claim under the Fair Housing Act, in part by prohibiting "uniform" injunctive relief. Selden Br. 31.

To be rendered unenforceable under California law, a contractual provision must be both procedurally and substantively unconscionable. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.*, 282 P.3d 1217, 1232 (Cal. 2012). Although Selden baldly asserts that the class action waiver is "procedurally and substantively unconscionable," he provides no explanation of how the Terms of Service are procedurally unconscionable and therefore has forfeited that argument. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir.

2019) (explaining that we will not "put flesh on [the] bones" of an argument raised "only in the most skeletal way") (cleaned up). In the absence of an argument that the class action waiver is procedurally unconscionable, Selden has failed to demonstrate an essential element of his claim that arbitration of his Fair Housing Act claim was unconscionable.

\* \* \*

Airbnb's sign-up screen put Selden on reasonable notice that by signing up he was agreeing to the arbitration clause within the Terms of Service, and Selden's discrimination claims were subject to arbitration. We therefore affirm the district court's order compelling arbitration.

## III.

Selden also contends that the district court erred by refusing to vacate the arbitrator's award due to alleged misconduct. Under the FAA, a federal court may vacate an arbitration award when, among other things, the arbitrator is "guilty of misconduct … in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."[6] 9 U.S.C.

---

[6] Selden also frames the arbitrator's misconduct as a "manifest disregard of the law." We have previously "recognized a limited nonstatutory ground for vacating an arbitration award where the arbitrator has acted in 'manifest disregard of the law.'" *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C. Cir. 1996) (cleaned up). It is unclear, however, whether manifest disregard remains a valid ground for vacatur after the Supreme Court's decision in *Hall Street Associates v. Mattel, Incorporated*, 552 U.S. 576, 584–86 (2008). In *Hall Street*, the Supreme Court held that the FAA's list of grounds for refusing to enforce an award is exclusive. *See id.* at 586. The FAA's list does not include manifest disregard. *See* 9 U.S.C. § 10(a).

§ 10(a)(3). Because "every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur," we vacate the award only if the failure "prejudices the rights of the parties." *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 818 (D.C. Cir. 2007) (cleaned up). A party seeking the vacatur of an arbitration award must establish that (1) the arbitrator committed some error, and (2) the error made a difference.

Selden alleges that the arbitrator committed misconduct by refusing to provide for interrogatories or depositions and by refusing to consider Dr. Svirsky's expert report. Neither ground constitutes misconduct warranting vacatur of the arbitration award.

Selden's first ground for misconduct—that the arbitrator failed to provide for interrogatories or depositions—fails because it is a problem of Selden's own making. Selden contends he made the arbitrator aware that he wanted this discovery on several occasions, but the arbitrator decided not to permit the requested discovery. The arbitrator explained, however, that he would consider renewed requests prior to the close of discovery, which Selden expressly reserved the right to do. Yet Selden never made those requests prior to the close of discovery. Instead, he waited to make the request for the first time at the hearing on Airbnb's dispositive motion. But that request came too late. It was not misconduct for the arbitrator

---

The Supreme Court has declined to resolve "whether 'manifest disregard' survives … *Hall Street*," either "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). Because Selden has not established that the arbitrator disregarded the law, we need not resolve whether manifest disregard remains a ground for vacating an arbitration award.

to deny interrogatories and depositions that were not requested prior to the close of discovery.

Selden was also not prejudiced by the lack of discovery. The arbitrator's award was based on a threshold legal conclusion, namely that the host's single-family residence was not a public accommodation or qualifying dwelling as required for Selden's discrimination claims. *See* 42 U.S.C. § 2000a(b)(1) (defining "public accommodation" to exclude a "building which contains not more than five rooms for rent" that "is actually occupied by the proprietor of such establishment as his residence"); *id*. § 3603(b)(1) (exempting a single-family residence from the Fair Housing Act). Nor was Airbnb's online platform a public accommodation according to the arbitrator. The arbitrator also determined that any alleged discrimination was committed by the host, and Airbnb had no part in it. Selden therefore simply could not make out a claim under the relevant discrimination statutes, because they did not apply to the Airbnb platform or to the host's room for rent. Selden does not argue that the arbitrator's legal conclusions were erroneous.

Selden maintains that interrogatories and depositions are critical to a discrimination plaintiff and that their absence "precluded him from fully prosecuting the merits [of] his claim." Selden Br. 36. According to Selden, this discovery was needed "to learn about *inter alia* the true relationship between Airbnb and its hosts, the credibility of Airbnb's photo policy, and the scale of the discriminatory impact against protected class members." Selden Br. 36. Selden, however, does not explain how any evidence of this "true relationship" might contradict the arbitrator's legal conclusion that the listed home was not a public accommodation or qualifying dwelling. Selden's vague assertions suggest that the exclusion of the

discovery, "far from being a serious blow to [his] case, caused [him] little if any prejudice." *Howard Univ.*, 512 F.3d at 723.

Selden's second ground of alleged misconduct is that the arbitrator refused to consider his expert report. Selden's expert, Dr. Svirsky, wrote a report explaining his study of racial discrimination in the sharing economy. Selden submitted the report to the arbitrator, but the arbitrator made no mention of it in his award. We need not decide whether an error occurred, because the alleged error did not prejudice Selden.

Selden has failed to establish how the purported refusal to consider the expert report would have altered the arbitrator's legal conclusions. Selden's expert report focused on how Airbnb's true name policy has a disparate impact on African American guests. Even if the true name policy had such a disparate impact, liability under Title II attaches only in the context of a public accommodation and liability under the Fair Housing Act does not attach to single-family residences. Selden has failed to establish that the alleged error would have made a difference to the arbitrator's legal determination that these statutes did not apply to Selden's claims because neither the listed room nor the Airbnb platform was a public accommodation or qualifying dwelling.

Because Selden has failed to demonstrate an error affecting the outcome of the arbitration, we decline to vacate the arbitration award.

* * *

For the foregoing reasons, we affirm the district court's order of arbitration and denial of Selden's motion to vacate the arbitration award.

*So ordered.*