2023 IL App (1st) 230356

No. 1-23-0356

Opinion filed September 22, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ANDREW PETERSON, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | |
| STEFANIA FRANCESCA DEVITA, AIRBNB, | ) | No. 2021 L 12856 |
| INC., AIRBNB RPG, INC., KEN MOORE | ) | |
| CONSTRUCTION, INC., and LORIE | ) | |
| MELHOUS, | ) | The Honorable |
| | ) | Moira S. Johnson |
|     Defendants-Appellants. | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Lavin dissented, with opinion.

**OPINION**

¶ 1      As a condition for doing business, electronic booking agents often bind consumers to a lengthy contract, sometimes labeled "Terms of Service." Usually, these contracts, imposed on a take-it-or-leave-it basis, contain a mandatory arbitration provision. Their legal ramifications can be severe. Just how severe is illustrated in this case.

¶ 2    Plaintiff Andrew Peterson was permanently injured when the railing gave way on an elevated porch deck of a home booked by a friend through Airbnb, Inc. Peterson sued Airbnb, among others, alleging negligence. Airbnb moved to stay the proceedings and compel arbitration, arguing that Peterson accepted Airbnb's terms of service by creating an Airbnb account several years earlier, though he never used the site. The contract mandated that claims and disputes "arising out of or relating to" use of its platform be arbitrated and an arbitrator decide the threshold issue of arbitrability. Peterson argued his friend booked the property, so Peterson was not obligated to arbitrate. The trial court ruled in Peterson's favor.

¶ 3    In this interlocutory appeal, Airbnb contends the trial court erred because (i) Peterson agreed to mandatory arbitration when he created an Airbnb account and accepted its terms of service and (ii) neither the trial court nor this court has authority to rule on arbitrability which the arbitration agreement delegates to an arbitrator. Alternatively, Airbnb contends that if we address the arbitrability issue, we should find that Peterson's claims (i) fall within the scope of the arbitration provision or (ii) are barred by principles of agency and equitable estoppel.

¶ 4    We affirm. First, under the caselaw, the threshold question of arbitrability presents a legal issue for the courts to decide. Next, because Peterson had nothing to do with booking the property on Airbnb, his injuries did not arise from his use of the Airbnb platform, so the arbitration provision does not apply to him. Similarly, the principles of agency and equitable estoppel do not apply either.

¶ 5                                    Background

¶ 6    Airbnb provides an online "community marketplace" for people to list and book accommodations worldwide. A host with a property to book creates a listing on Airbnb's website. A guest wanting to book a property signs up and uses Airbnb's marketplace to

communicate directly with a host to request a booking. If the host accepts, the host and guest enter an agreement. Airbnb does not own, manage, or operate the properties. Instead, Airbnb facilitates the booking between a property host and a guest. To reserve property through Airbnb, a user must create an account and profile and accept Airbnb's terms of service. Andrew Peterson created an Airbnb account in January 2017 and accepted the terms of service and its updated terms in September 2018 and September 2019. The terms provide in part:

> "You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, the Group Payment Service, or the Collective Content (collectively, 'Disputes') will be settled by binding individual arbitration (the 'Arbitration Agreement') *** If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide the issue."

¶ 7        A choice of law provision applies the laws of California, where Airbnb has its headquarters.

¶ 8        In May 2020, a friend of Peterson's, Ian Bannon, used Airbnb's website to book a property in Galena. (Bannon is not a defendant.) Bannon agreed to Airbnb's terms of service when he created an Airbnb account. In making the reservation, Bannon indicated nine guests. Bannon did not list Peterson as a guest on the reservation.

¶ 9        While staying at the Galena property, Bannon hosted a party that Peterson attended. As Peterson stood on an elevated porch deck, its railing gave way. Peterson fell hard, sustaining serious injuries, including an open ankle fracture that necessitated a below-the-knee amputation of his left leg.

¶ 10    Peterson filed a 15-count complaint against Airbnb, Inc., and others, asserting claims for negligence, *res ipsa loquitur*, and construction negligence. He sought damages for his physical injuries and loss of normal enjoyment of life.

¶ 11    Airbnb moved to compel arbitration and stay proceedings, claiming that (i) Peterson consented to the mandatory arbitration provision by accepting its terms of service and (ii) the trial court should stay the proceedings and refer arbitrability to an arbitrator. Alternatively, Airbnb contended the court should compel arbitration because (i) Peterson's claims come squarely within the scope of the arbitration agreement, (ii) Bannon agreed to the terms of service and acted as Peterson's agent when booking the property, or (iii) principles of equitable estoppel apply.

¶ 12    Peterson argued that because he has no involvement whatsoever in booking the property, his claims fall outside the arbitration agreement's scope. Plus, Bannon's relationship to Peterson fails to satisfy the elements of either agency or equitable estoppel.

¶ 13    After a hearing, the trial court entered an order denying Airbnb's motion. Airbnb filed a notice of interlocutory appeal, asking this court to vacate the order and compel arbitration.

¶ 14                                Analysis

¶ 15                            Standard of Review

¶ 16    Under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), the sole issue concerns whether the movant made a sufficient showing to sustain the order granting or denying the relief. *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1099 (2009). We review *de novo* appeals from the denial of a motion to compel arbitration without an evidentiary hearing. *Id.* In addition, interpreting an arbitration agreement presents a question of law reviewed *de novo*. *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52 (2011).

¶ 17                                   Choice of Law

¶ 18        Preliminarily, Airbnb asserts that the choice of law provision in its terms of service

specifies California law. That presupposes an enforceable contract binding Peterson. Yet, the

central disputed issue involves whether an enforceable contract even exists. Hence, resorting

to the choice-of-law provision would be premature. See *Life Plans, Inc. v. Security Life of

Denver Insurance Co.*, 800 F.3d 343, 357 (7th Cir. 2015) (court may decline to follow

contractual choice-of-law provision "if the contract's legality is fairly in doubt, for example, if

the contract is unconscionable, or if there is some other issue as to the validity of the very

formation of the contract"). In the absence of the choice-of-law provision, Illinois law provides

that "the validity, construction and obligations of a contract are governed by the law of the

place where it is made." *Progressive Insurance Co. v. Williams*, 379 Ill. App. 3d 541, 546

(2008). Thus, we look to Illinois law.

¶ 19                                   Arbitrability

¶ 20        When presented with a motion to dismiss or stay an action and compel arbitration, the trial

court limits its inquiry to "gateway" issues, including the arbitration clause's validity and, if

valid, whether the dispute falls within its scope. *Hartz v. Brehm Preparatory School, Inc.*, 2021

IL App (5th) 190327, ¶ 42; see also *United Cable Television Corp. v. Northwest Illinois Cable

Corp.*, 128 Ill. 2d 301, 306 (1989) (before issue can properly be referred to arbitrator, particular

dispute must be of type parties agreed should be submitted to arbitration).

¶ 21        As noted, Airbnb contends the trial should have granted its motion to stay and referred

the case to arbitration because the arbitration provision requires an arbitrator to decide issues

of arbitrability. Before determining that issue, however, we first must address whether the

Airbnb terms of service relate to the allegations in Peterson's complaint.

¶ 22    As the issue involves arbitration, we note that the provisions of the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)), and not state law, control the putative terms of service. The Federal Arbitration Act reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); 9 U.S.C. §2 (2018). Moreover, a court should order arbitration "only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." (Emphasis in original.) *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010). "Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.* at 299-300 (quoting First *Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010). State law contract formation principles determine whether a contract exists between the parties. *Janiga*, 615 F.3d at 742 (citing *Kaplan*, 514 U.S. at 944).

¶ 23    Contract formation issues center on the elements of an offer, a strictly conforming acceptance of the offer, and consideration. *Martin v. Government Employees Insurance Co.*, 206 Ill. App. 3d 1031, 1035 (1990). Courts treat arbitration agreements like any other contract (*Midland Funding, LLC v. Raney*, 2018 IL App (5th) 160479, ¶ 20), and defenses such as fraud, duress, or unconscionability may invalidate the contract (*Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 13).

¶ 24    Airbnb contends that when Peterson created an Airbnb account, he accepted its terms of service (as updated) and agreed to the mandatory arbitration provision. For support, Airbnb relies on three cases enforcing its arbitration provision: *Selden v. Airbnb, Inc.* 4 F.4th 148, 157 (D.C. Cir. 2021), *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 702 (Fla. 2022), and *Airbnb, Inc.*

*v. Rice*, 518 P.3d 88 (Nev. 2022). Most importantly, all three cases did what Airbnb contends we have no authority to do—addressed arbitrability of plaintiff's claims.

¶ 25      In *Selden*, the plaintiff filed a putative class action complaint against Airbnb in federal court, alleging racial discrimination and civil rights violations. *Selden*, 4 F.4th at 153-54. The plaintiff created an Airbnb account and provided a profile picture as required at the time. When Selden, an African American, attempted to book a property, the host told him it was unavailable. Later, Selden used a fake Airbnb account with a profile picture of a white person, and the host accepted. *Id.* at 153.

¶ 26      The district court granted Airbnb's motion to compel arbitration, finding that Airbnb's sign-up screen placed Selden on reasonable notice of the terms of service to which he agreed when he created an account. *Id.* at 154. The court also found that Selden's discrimination claims were arbitrable. *Id.* at 154-55. Selden appealed, arguing, in part, that he did not have reasonable notice of the terms of service, including the arbitration clause. The Court of Appeals disagreed. *Id.* at 159-60.

¶ 27      In *Doe*, Airbnb filed a motion to compel arbitration where the plaintiffs booked a condominium unit through their Airbnb account and later learned the owner had installed hidden cameras throughout the unit. *Doe*, 336 So. 3d at 699-700. Airbnb moved for arbitration, arguing that plaintiffs agreed to arbitrate by accepting the terms of service when creating their accounts. *Id.* at 700. The trial court granted Airbnb's motion, finding "that the parties entered an express agreement which incorporated the AAA rules, and that [it was] therefore bound to submit the issue of arbitrability to the arbitrator." (Internal quotation marks omitted.) *Id.* at 701. The Florida Supreme Court affirmed. *Id.* at 703.

¶ 28 In both *Selden* and *Doe*, the plaintiffs' claims relate to their using the Airbnb platform when booking or attempting to book properties. Unlike in *Selden* and *Doe*, Peterson's claims did not arise from his use of the Airbnb platform. Peterson happened to be at the property as a guest of someone who booked through Airbnb. Thus, *Selden* and *Doe* do not support binding Peterson.

¶ 29 The other case Airbnb relies on, *Rice*, is factually similar. In *Rice*, the plaintiffs were on their way to a party hosted at a property booked through Airbnb. *Rice*, 518 P.3d at 89. Both plaintiffs had Airbnb accounts, but neither booked the property. *Id.* An unknown person shot plaintiffs, killing one and injuring the other. *Id.* The father and administrator of the deceased plaintiff's estate sued Airbnb for wrongful death and personal injury. *Id.* The trial court denied Airbnb's motion to compel arbitration, finding, in part, that the dispute "did not arise from the agreements." *Id.* at 90.

¶ 30 Airbnb appealed, arguing the trial court lacked discretion to determine whether the dispute was arbitrable because its terms of service delegated the issue or arbitrability to an arbitrator. *Id.* The Nevada Supreme Court agreed and reversed, relying on *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, ___, 139 S. Ct. 524, 529 (2019), which held that when parties clearly and unmistakably delegate the issue of arbitrability to an arbitrator, a court may not disregard that intent, even if the arguments favoring arbitration are "wholly groundless." See *Rice*, 518 P.3d at 90-92.

¶ 31 Nevertheless, the *Rice* court acknowledged that, unlike in *Henry Schein*, the plaintiffs' "dispute *** did not arise out of a contract between the parties" and their claims "have no relation to [their] use of Airbnb's services or platform." *Id.* at 91. Still, the court stated that *Henry Schein* "expressly rejected use of the 'wholly groundless' exception to get around the

delegation provision" and "infer[red] from this that wholly groundless exception is improper even where the arbitration agreement clearly is unrelated to the dispute." *Id.* at 92.

¶ 32 Two dissenting justices contended that the majority misread *Henry Schein* and that the decision "will lead to absurd consequences in the future." *Id.* at 93 (Stiglich, J., dissenting, joined by Herndon, J.). The dissent suggested that the court should have followed the "path tread by" the California Court of Appeals in *Moritz v. Universal Studios LLC*, 268 Cal. Rptr. 3d 467 (Ct. App. 2020), which "harmonize[d] *Henry Schein* with common sense." *Rice*, 518 P.3d at 93 (Stiglich, J., dissenting, joined by Herndon, J.) As the dissent noted, the *Moritz* court explained that "[a]n arbitration agreement is tied to the underlying contract containing it, and applies 'only where a dispute has its real source in the contract.' " *Moritz*, 268 Cal. Rptr. 3d at 473 (quoting *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190, 205 (1991)).

¶ 33 Further, the *Moritz* court concluded that *Henry Schein* "expressly understood that the [FAA] requires enforcement of arbitration clauses with respect to disputes 'thereafter arising out of such contract' " but rejected the argument that " 'an arbitration provision creates a perpetual obligation to arbitrate any conceivable claim that [plaintiff] might ever have against them.' " (Internal quotation marks omitted.) *Rice*, 518 P.3d at 93 (Stiglich, J., dissenting, joined by Herndon, J.) (quoting *Moritz*, 268 Cal. Rptr. 3d at 475-76).

¶ 34 According to the dissent, *Moritz* is "sound as a matter of law and policy" because the respondents' tort claims should not be subject to arbitration provision in the absence of evidence, they "*ever* utilized Airbnb's services." (Emphasis in original.) *Id.* "The Terms of Service bind hosts and guests who utilize Airbnb. As relevant to the underlying tort claims, respondents were neither." *Id.* at 94. Further, " 'the parties happened to have a contractual

relationship' completely unrelated to the underlying tort claims" and chance should not engender a contractual relationship. *Id.* (quoting *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995)).

¶ 35        As a decision from another jurisdiction, *Rice* is not binding on this court but may be considered persuasive authority. *Eckhardt v. The Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 15. We find persuasive the reasoning in the *Rice* dissent and the majority opinion in *Moritz*—that *Henry Schein* can be harmonized with common sense " 'only where a dispute has its real source in the contract.' " *Moritz*, 268 Cal. Rptr. 3d at 473 (quoting *Litton Financial Printing Division*, 501 U.S. at 205). As the *Rice* dissent noted, a plaintiff's tort claims should not be subject to the arbitration provision in the absence of evidence they "*ever* utilized Airbnb's services." (Emphasis in original.) *Rice*, 518 P.3d at 93. The arbitration provision should apply only when the claims arise from a plaintiff's use of the Airbnb platform and not on the fortuity of a plaintiff having created an account. Holding otherwise leads to the absurd result of the majority's decision in *Rice*. A contract—and not fate— dictates arbitrability. See *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 18 (photographer was not on reasonable notice of contractual relationship between himself and Major League Baseball club merely because he used media credential his employer procured, which included provision requiring arbitration of all claims asserted against club).

¶ 36        Like the *Rice* court, the dissent asserts that creating an Airbnb account alone binds Peterson to arbitration in perpetuity even if, as here, his claims have no connection whatsoever with his use of the website. Were the law as the dissent would have it, a member of a hotel chain's internet site with an arbitration clause like Airbnb's could attend a wedding at one of its hotels

years later, sustain an injury from a falling chandelier, and have to arbitrate, even if the wedding host had an account too. Under the dissent's theory, every wedding guest, whether or not they belonged to the hotel chain's Internet site, would have to arbitrate either because they had an account or the host had an account. As the *Rice* dissent noted, an "absurd consequence," indeed.

¶ 37   Peterson was not a party or participant in booking the property where the accident occurred and cannot be required to arbitrate under the facts in this case. Because we find no binding arbitration agreement, we need not address Airbnb's arguments on whether Peterson's claims fall within the agreement's scope.

¶ 38                                    Agency

¶ 39   Alternatively, Airbnb contends that Bannon acted as Peterson's agent when he booked the property, thereby binding Peterson.

¶ 40   A non-signatory may be bound to an arbitration agreement according to ordinary principles of agency. *Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 891 (2010). In an agency relationship, the principal can be legally bound by action taken by the agent where the principal confers actual authority on the agent. *Granite Properties Ltd. Partnership v. Granite Investment Co.*, 220 Ill. App. 3d 711, 714 (1991). Actual authority may be express or implied. *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 172 (2003). Express authority directly grants power to the agent to perform a particular act. *Zahl v. Krupa*, 365 Ill. App. 3d 653, 660-61 (2006). Implied authority involves actual authority proved circumstantially by evidence of the agent's position. *Buckholtz*, 337 Ill. App. 3d at 172. Implied authority happens when the conduct of the principal, reasonably interpreted, causes the agent to

believe that the principal wants him or her to act on the principal's behalf. See Restatement (Second) of Agency § 26 (1958).

¶ 41 Airbnb contends Bannon acted with actual authority on Peterson's behalf when he booked the property. For support, Airbnb relies on *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 174-76 (D. Mass. 2007). There, *with the plaintiff's consent*, the plaintiff's friend purchased airline tickets and booked accommodations for a trip for herself and the plaintiff through Expedia, a travel website. *Id.* at 166. To finalize the reservation, the plaintiff's friend had to " click through" Expedia's terms and conditions, which included a liability disclaimer. *Id.* at 166-67. The plaintiff was injured on the trip and filed suit against Expedia, among others. *Id.* at 165. The district court, enforcing the liability disclaimer, granted Expedia summary judgment. *Id.* at 175-76. The court reasoned that the plaintiff's friend acted as her agent when the plaintiff authorized the friend to purchase tickets and book accommodations. *Id.* at 175.

¶ 42 Airbnb and the dissent assert that, as in *Hofer*, Bannon acted as Peterson's agent when he made the Airbnb reservation because Peterson's complaint acknowledges that he was a "renter" or "guest" at the property. But Airbnb would have to establish that Peterson authorized Bannon, and nothing in the record shows that Peterson authorized Bannon to make the reservation on his behalf. And while the reservation indicated nine guests, it did not list Peterson.

¶ 43 Nor can Airbnb establish that Bannon acted with implied authority. The record is silent about what would have led Airbnb to reasonably believe Bannon acted as Peterson's agent.

¶ 44 Equitable Estoppel

¶ 45 Lastly, Airbnb argues principles of equitable estoppel. For support, Airbnb cites *Jensen v. U-Haul Co. of California*, 226 Cal. Rptr. 3d 797, 806 (Ct. App. 2017), which states that non-

signatory plaintiffs may be estopped from refusing to arbitrate if their claims "depend[ ] upon, or [are] inextricably intertwined with" the contractual obligations of the contract containing the arbitration clause. (Internal quotation marks omitted.) Although *Jensen* does not bind us, the court acknowledged, "[e]ven if a plaintiff's claims touch matters relating to the arbitration agreement, the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action." (Internal quotation marks omitted.) *Id.* Peterson's causes of action do not rely on Bannon's booking agreement. So, *Jensen* does not jumpstart Airbnb's argument.

¶ 46     Airbnb also invokes another nonstarter, the "direct benefits" theory applied in some federal court cases. The "direct benefits" theory estops a party from " 'asserting that the lack of his [or her] signature on a written contract precludes enforcement of the contract's arbitration clause when he [or she] has consistently maintained that other provisions of the same contract should be enforced to benefit him [or her].' " *Snyder v. Jack Schmitt Ford, Inc.*, 2022 IL App (5th) 210413-U, ¶ 39 (quoting *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)).

¶ 47     Airbnb contends that Peterson's claims stem from the benefits he received from Bannon's booking through Airbnb (presumably use of the property), implicating the direct benefits estoppel theory. Not so. Peterson's common law negligence claims do not rely on the terms to which Bannon agreed when he booked the property. Further, other than as an invitee to a party, Peterson did not benefit from Bannon's booking. Thus, the "direct benefits" theory does not apply.

¶ 48     Affirmed.

¶ 49   JUSTICE LAVIN, dissenting:

¶ 50   Because I believe that Peterson agreed to arbitrate disputes with Airbnb, I respectfully dissent. At the outset, our task is to determine whether a valid arbitration agreement exists. *Henry Schein*, 586 U.S. at ___, 139 S. Ct. at 530; *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 226 (2008); see also *Selden*, 4 F.4th at 155 ("arbitration is a matter of contract" (internal quotation marks omitted)). Here, there are two such separate agreements.

¶ 51   As to the first, Airbnb offered Peterson the opportunity to utilize its services, which consist of providing an online platform to connect individuals seeking to rent out their properties (colloquially, the hosts) with those seeking to rent the properties (colloquially, the guests). Airbnb also facilitates the payments between hosts and guests. Peterson, by creating and maintaining an Airbnb account, accepted Airbnb's terms of service and policies. The terms of service identified the scope of Airbnb's services, eligibility, registration, and other such matters.

¶ 52   Under the title of the applicable "Terms of Service," a bolded paragraph appeared providing that the arbitration clause applied to all Airbnb members and all disputes with Airbnb. In accepting those terms, Peterson agreed "to be bound by this arbitration clause." Later, the terms of service more specifically stated:

"any dispute, claim or controversy arising out of or relating to these Terms or the applicability, break, termination, validity, enforcement or interpretation thereof, or to the *use of the Airbnb Platform*, the Host Services, the Group Payment Service, or the Collective Content (collectively, 'Disputes') will be settled by binding individual arbitration (the 'Arbitration Agreement'). *If there is a dispute about whether this Arbitration Agreement*

*can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.*" (Emphases added.)

The "Airbnb Platform" consists of the "Site" (the Airbnb website and other websites utilizing Airbnb), the "Application" (Airbnb's mobile, tablet and other smart device applications, and application program interfaces), and "Airbnb Services" (all associated services).

¶ 53     In this case, Airbnb offered Peterson, among other things, use of the platform, and Peterson accepted that offer. See *Martin*, 206 Ill. App. 3d at 1035. I also find that consideration supported the contract. See *id.* Peterson received the benefit of the ability to view properties, correspond with hosts, and potentially book those properties—all in a manner consistent with Airbnb's terms/policies. See *Ross v. May Co.*, 377 Ill. App. 3d 387, 391 (2007) (noting, "[t]he essential element of consideration is a bargained-for exchange of promises or performances that may consist of a promise, an act, a forbearance, or the creation, modification, or destruction of a legal relation"). Importantly, this benefit existed even if Peterson did not himself fully utilize it. Furthermore, Airbnb benefited from Peterson signing up for the website and agreeing to its terms with the understanding that it could potentially make money with future bookings. Notwithstanding the majority's finding to the contrary, the consideration supporting this contract did not require Peterson to actually book a stay at a property through Airbnb. The mere ability to do so was itself a benefit constituting consideration for this particular contract.

¶ 54     As to the second agreement, Peterson concedes that Bannon booked the property in question through Airbnb and thereby also agreed to Airbnb's same terms and conditions, including the arbitration of disputes arising out of the rental of the property. The terms of that agreement provided that each Airbnb guest must be "made aware of and agree" to the terms, and the booking provided only a limited license to enter, occupy, and use the accommodation

for the appointed duration. Peterson's complaint makes clear that he lawfully entered the property in question as an invitee and guest of his friend Bannon, even if he was not formally listed on the Airbnb guest reservation.[1] As such, by his own admission, Peterson would not have been present on the property or in a position to sue Airbnb but for Bannon's rental agreement through Airbnb. As set forth, we are not dealing with a guest who is unfamiliar with Airbnb or its terms and can claim ignorance as to the rental conditions. Peterson does not claim he lacked knowledge that he had entered into an Airbnb rental. I would add that there is also some irony in Peterson's position that Airbnb owed him a duty of care, "as would an innkeeper to a guest," but he was not bound by any of the burdens that apply to Airbnb's guests. Based on the foregoing, I would conclude that Bannon was acting as an agent for Peterson (the principal). See *Curto*, 405 Ill. App. 3d at 891 (a nonsignatory to an arbitration agreement can be bound through agency); see also *Bowyer v. Adono*, 2020 IL App (3d) 180685, ¶ 39 (with undisputed facts, agency can sometimes be a question of law).

¶ 55        As astutely stated by one federal district court:

>        "Nothing in [this] arrangement is remarkable in the slightest respect; family members, friends, and work colleagues routinely book travel plans for others, and it would be extraordinarily cumbersome to require that each traveler book his or her own ticket. Each such arrangement is necessarily an agency relationship: the person booking the tickets is acting as an agent on behalf of the other members of the traveling party. Implicit in that agency relationship is the power to bind the principal as to matters

---

[1]In his appellee brief, Peterson writes that "coincidentally, on the date in question, the Appellee attended a social gathering at the property rented by Bannon." I find this at odds with Peterson's complaint, wherein he writes that, on the day in question, he was "a renter and invitee, guest, and rightfully and lawfully walking upon and within the Property."

within the scope of the relationship, including the acceptance of the terms of a disclaimer." *Hofer*, 516 F. Supp. 2d at 175.

Furthermore, as to consideration for the agency contract, Peterson enjoyed the same benefit as Bannon—the use and enjoyment of the property (although it turned out not to be so enjoyable for Peterson).

¶ 56    Bannon thus had the authority, even if implicit or apparent, to book the Airbnb on behalf of his guests and invitees to the property, which included Peterson, and to agree to arbitration of disputes under Airbnb's requirements. See *Testa v. Emeritus Corp.*, 168 F. Supp. 3d 1103, 1108 (N.D. Ill. 2016); *Curto*, 405 Ill. App. 3d at 895 (noting, "[a]pparent authority arises when a principal creates a reasonable impression to a third party that the agent has the authority to perform a given act"). Accordingly, Peterson is bound by those same terms and conditions, which unequivocally require him to arbitrate disputes with Airbnb.

¶ 57    The question of which arbitration agreement applies in this instance—Peterson's initial signatory agreement with Airbnb, Bannon's agreement made on behalf of guests, or both—is a question of scope for the arbitrator to decide, as set forth in the contracts. Each agreement stated that an arbitrator would decide whether the agreement covered the dispute in question. Henry *Schein* makes this abundantly clear:

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at ___, 139 S. Ct. at 529.

In addition, *Schein* states: "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530.

¶ 58    Last, I disagree with the majority's conclusion that the arbitration clause does not apply to Peterson because Peterson's injuries "did not arise from his use of the Airbnb platform." See *supra* ¶¶ 4, 28. This argument enters within the realm scope (which we are not supposed consider at this point). Regardless, if we were to go there, I would conclude that in addition to Bannon's agreement with Airbnb on behalf of Peterson, Peterson was also using Airbnb's platform and therefore its "services" under his initial signatory contract when this dispute arose.

¶ 59    For the aforementioned reasons, I dissent.

*Peterson v. Devita*, **2023 IL App (1st) 230356**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-L-12856; the Hon. Moira S. Johnson, Judge, presiding. |
| **Attorneys for Appellant:** | John C. Ellis and David DeSchepper, of Ellis Legal, P.C., of Chicago, and Raechel Keay Kummer (*pro hac vice*), of Morgan, Lewis & Bockius LLP, of Washington, D.C., for appellants Airbnb, Inc. and Airbnb RPG, Inc. <br><br> No briefs filed for other appellants. |
| **Attorneys for Appellee:** | Matthew A. Saltzman, of Sherwood Law Group, LLC, of Chicago, for appellee. |