# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 18, 2025                    Decided May 30, 2025

No. 24-5092

JUDITH JELTSJE PIETERSEN AND DANIEL GERHARD BROWN,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF STATE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-03544)

———

*Carl W. Hampe* argued the cause for appellants. With him on the briefs were *Daniel P. Pierce* and *Daniel D. Schaeffer.*

*Cara E. Alsterberg*, Senior Litigation Counsel, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, at the time the brief was filed, and *David M. McConnell*, Director.

Before: PILLARD and PAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge.*

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Dissenting opinion filed by *Circuit Judge* PAN.

EDWARDS, *Senior Circuit Judge*: The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, requires "foreign nationals seeking entry into the United States [to] undergo a vetting process to ensure that they satisfy the numerous requirements for admission." *Trump v. Hawaii*, 138 S. Ct. 2392, 2403 (2018). Typically, a noncitizen must obtain a visa to be admitted to the United States. *Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1818 (2024). The INA further provides, in relevant part, that a noncitizen is inadmissible and ineligible to receive a visa if that individual "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States." 8 U.S.C. § 1182(a)(6)(C)(i). The INA also grants consular officers authority to review applications for visas. 8 U.S.C. § 1104(a). And the State Department Foreign Affairs Manual ("Manual" or "FAM") instructs consular officers to base inadmissibility determinations on a "reason to believe" that an applicant has willfully misrepresented a material fact. *See* 9 FAM 302.9-4(B)(3)(g)(l)(b).

This case concerns the ongoing saga of Judith Jeltsje Pietersen, a Dutch citizen, and her fiancé, Daniel Gerhard Brown, an American citizen (collectively, "Appellants"), who are trying to arrange for Pietersen to get a visa so that she and Brown can get married and be together in the United States. Pietersen is a horse trainer and expert dressage rider. As part of a visa waiver program, which authorizes citizens of participating countries to travel to the United States as a visitor for stays of 90 days or less without needing a visa, Pietersen

has regularly traveled to the United States. While in the country, Pietersen would occasionally assist a friend and colleague with horse-riding clinics in Utah and receive nominal compensation in exchange for her assistance. In February 2020, however, U.S. Customs and Border Protection ("CBP") denied Pietersen entry into the United States. Although Pietersen told CBP officers that her primary purpose for visiting the country was a skiing trip in Colorado, CBP claimed that she had previously engaged in unlawful employment while in the United States. As a result, CBP denied Pietersen entry into the country for a lack of a valid unexpired visa.

Pietersen and Brown have made several attempts to obtain a visa for Pietersen. Their most recent request has been for a "K-1" visa, which is available to individuals who seek to enter the United States to marry a U.S. citizen. *See* 8 U.S.C. § 1101(a)(15)(K)(i). However, consular officers have denied her K-1 visa applications based on the "willfully misrepresenting a material fact" ground of inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(i). Essentially, consular officers have claimed that Pietersen engaged in unauthorized work while in the country under the Visa Waiver Program and that this constituted willful misrepresentation proscribed by the INA.

In November 2022, Appellants filed suit in District Court against the U.S. Department of State and State Department officials (collectively, "State Department") to challenge the denials of Pietersen's visa applications and the Manual guidance. They alleged, *inter alia*, that the consular officers failed to meaningfully review Pietersen's applications, that the officers erroneously applied a "reason to believe" standard to find her inadmissible, and that the "reason to believe" standard contravenes the INA.

The State Department moved to dismiss the complaint for a lack of subject matter jurisdiction and for failure to state a claim. The District Court granted the State Department's motion, holding that the consular nonreviewability doctrine barred Appellants' claims and that the claims were otherwise meritless. *See Pietersen v. U.S. Dep't of State*, No. 22-cv-3544, 2024 WL 1239706, at *5-8 (D.D.C. Mar. 21, 2024).

On appeal, Appellants principally argue that the Manual's "reason to believe" standard that was applied to deny Pietersen's visa applications contravenes the INA. They no longer dispute that their challenges to Pietersen's prior visa denials are unreviewable under the consular nonreviewability doctrine; instead, they focus their appeal on "the improper *future* application of [the Manual's] erroneous guidance." Br. for Appellants 18.

For the reasons explained below, we reverse and remand the case for further proceedings. First, we reverse the District Court's holding that the doctrine of consular nonreviewability bars Appellants' Administrative Procedure Act ("APA") claim for prospective relief. When plaintiffs launch forward-looking challenges to the lawfulness of regulations or policy governing consular decisions, courts may review them "to assure that the executive departments abide by the legislatively mandated procedures." *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985). Second, we have real doubts regarding the viability of the State Department's "reason to believe" standard, and especially the Department's reliance on 8 U.S.C. § 1201(g) to support the application of the standard in a case of this sort. Given the unsatisfactory briefing of this issue by both parties, we vacate the District Court's alternative holding based on section 1201(g) and remand for further proceedings to determine whether the INA authorizes the challenged FAM guidance.

## I.  BACKGROUND

### A.  *Legal Background*

"The Immigration and Nationality Act sets forth conditions for foreign nationals to receive visas allowing entry into the United States." *ITServe All., Inc. v. U.S. Dep't of Homeland Sec.*, 71 F.4th 1028, 1031 (D.C. Cir. 2023) (citation omitted). Importantly, the political branches control visa decisions. *Muñoz*, 144 S. Ct. at 1818. Specifically, Congress establishes "the terms for entry [to the United States], and the Department of State implements those requirements at United States Embassies and consulates in foreign countries." *Id.* As relevant here, "Congress has streamlined the visa process for noncitizens with immediate relatives in the United States." *Id.* This process consists of the citizen-relative filing a petition with U.S. Citizenship and Immigration Services ("USCIS") to have the noncitizen designated as an immediate relative; the noncitizen then applying for a visa if USCIS approves the petition; and the noncitizen submitting written materials and interviewing with a consular officer abroad. *Id.*

As noted above, the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citation omitted); *see* 8 U.S.C. §§ 1104(a), 1201. As such, "[i]n view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). That doctrine ''shields a consular official's decision to issue or withhold a visa from judicial review.'' *Baan Rao*, 985 F.3d at 1024. That said, there

are two "narrow exceptions" to the doctrine: (1) when judicial review is expressly authorized by statute, or (2) if a noncitizen's exclusion burdens an American citizen's constitutional rights. *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) (citation omitted). However, judicial review is confined "to whether the officer gave a 'facially legitimate and bona fide reason' for denying a visa." *Id.* (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)).

Moreover, 8 U.S.C. § 1182 "defines the universe of aliens who are admissible into the United States (and therefore eligible to receive a visa)." *Trump*, 138 S. Ct. at 2414. It provides, *inter alia*, that a noncitizen is inadmissible and ineligible to receive a visa if that individual "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States." 8 U.S.C. § 1182(a)(6)(C)(i). Relatedly, section 1201 governs consular officers' issuance of visas. *See id.* § 1201. In pertinent part, it mandates that no visa shall be issued to a noncitizen if "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." *Id.* § 1201(g).

Finally, the State Department's Foreign Affairs Manual "contains directives and guidance … based on U.S. immigration law and regulations" for consular officers making visa decisions, including the grounds of ineligibility for a visa. 9 FAM 101.1-1; *see* 9 FAM 302; 22 C.F.R. § 5.5 (2024) (discussing the Manual). The Manual provision at issue in this case offers guidance for finding a noncitizen ineligible based on the willful misrepresentation ground in section 1182. *See* 9 FAM 302.9-4. It explains that, to determine that a noncitizen made a misrepresentation at the time of the visa application or

admission to the United States, a consular officer "must make a finding that there is direct or circumstantial evidence sufficient to meet the 'reason to believe' standard, which requires more than mere suspicion and is akin to probable cause." 9 FAM 302.9-4(B)(3)(g)(1)(b).

## B. *Factual and Procedural Background*

Pietersen, a citizen and national of the Netherlands, has regularly traveled to the United States under the Visa Waiver Program. The program, which is administered by the U.S. Department of Homeland Security, "enables eligible citizens of certain countries to travel to the United States for tourism or business for stays of 90 days or less without obtaining a visa." *Matar v. Transp. Sec. Admin.*, 910 F.3d 538, 541 (D.C. Cir. 2018) (citation omitted). To qualify for travel under the Visa Waiver Program, individuals must receive travel authorization through the Electronic System for Travel Authorization ("ESTA"). 8 C.F.R. § 217.5 (2022); *Matar*, 910 F.3d at 541.

While in the United States, Pietersen has occasionally assisted a friend with horse-riding clinics in Utah and received nominal compensation for her work. In February 2020, Pietersen traveled to the United States for a ski trip, but CBP denied her entry into the country at the Minneapolis-St. Paul International Airport for alleged unlawful employment. Specifically, CBP claimed that, based on a social media page showing her prior participation in the riding clinics, Pietersen had engaged in unlawful employment. As a result, CBP revoked her ESTA approval and denied her entry into the country for a lack of a valid unexpired visa. Without that approval, Pietersen needed to obtain a visa for any future entries into the United States.

When back in the Netherlands, Pietersen first applied for a B-1/B-2 visa for travel to the United States for medical appointments. This visa authorizes entry to the United States if a noncitizen "ha[s] a residence in a foreign country which he has no intention of abandoning and . . . is visiting the United States temporarily for business or temporarily for pleasure." 8 U.S.C. § 1101(a)(15)(B). Ultimately, following an interview, a consular officer refused Pietersen's application because she purportedly lacked ties that would compel her to return to the Netherlands.

Consequently, Pietersen and Brown decided that she should pursue a K-1 visa. This visa permits entry to the United States if a noncitizen "is the fiancée or fiancé of a citizen of the United States … and … seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission." 8 U.S.C. § 1101(a)(15)(K)(i). As the first step in the process, Brown submitted Form I-129F, Petition for Alien Fiancé(e), with USCIS in 2021, which USCIS approved in 2022. Pietersen then attended an interview with a consular officer at the U.S. Consulate in Amsterdam, and that officer subsequently refused her K-1 visa application on the grounds that she had committed a misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i). On Pietersen's second attempt for a K-1 visa, a consular officer again refused her application under section 1182(a)(6)(C)(i), stating that the consulate viewed her earning money as a visitor under the Visa Waiver Program as a misrepresentation.

Appellants subsequently filed an action in the District Court against the State Department and State Department officials for a variety of claims under the INA, Due Process Clause of the Fourteenth Amendment, Mandamus Act, and Declaratory Judgment Act. Specifically, they alleged that the agency's consular officers acted unlawfully by failing to

review critical information that Pietersen submitted in support of her K-1 visa applications, and by applying a "reason to believe" standard to determine that she had committed a misrepresentation. Appellants further claimed that the Manual allows consular officers to find noncitizens inadmissible simply if that officer has reason to believe that a noncitizen willfully misrepresented a material fact – which, in their view, contravenes the INA. As relief, Appellants sought, *inter alia*, a declaration that the State Department's failure to review Pietersen's proffered evidence was unlawful, a declaration that the Manual's instruction on the misrepresentation ground of inadmissibility is unlawful, vacatur of Pietersen's visa refusals, and an order directing the State Department to reconsider Pietersen's eligibility under the proper statutory standards.

The State Department moved to dismiss Appellants' complaint for a lack of subject matter jurisdiction and for failure to state a claim. The District Court granted the motion and dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Pietersen*, 2024 WL 1239706, at *1. The District Court rendered the following holdings in support of its decision.

First, the court held that Brown had Article III standing because he suffered a concrete injury from the denial of Pietersen's visa applications – namely, Pietersen's exclusion from entering the country interfered with his relationship with his non-citizen fiancée. *Id.* at *4. However, the court did not reach Pietersen's standing since she sought the same relief as Brown and Brown had standing. *Id.*

Second, the court concluded that the consular nonreviewability doctrine barred Appellants' claims, and that none of the exceptions to the doctrine applied. *Id.* at *5. In particular, the court explained that the doctrine precludes

review of Pietersen's visa denials and related claims regarding the consular officer's failure to consider probative information and erroneous application of the "reason to believe" standard because those claims cannot be distinguished from the visa decision itself. *Id.* With respect to the doctrine's exceptions, the court found that Congress had not expressly authorized judicial review of Appellants' claims, nor did the denial of Pietersen's visa applications impermissibly burden Brown's constitutional rights. *Id.* at *7.

Third, the court rejected Appellants' APA claim that the Manual's "reason to believe" standard violated the INA. *Id.* at *6. Specifically, it reasoned that Appellants failed to plead an APA claim, and that the consular nonreviewability doctrine also forecloses challenges to the validity of underlying regulations. *Id.* Notwithstanding these issues, the court held that the claim failed on the merits because "8 U.S.C. § 1201(g), which renders § 1182(a)(6)(C)(i) operative, *does* contain 'reason to believe' language," and, thus, the Manual's standard "tracks the statutory text." *Id.*

Fourth, the court likewise rejected Appellants' argument that the INA's delegation of the power to grant or refuse visas to consular officers violates the Constitution's Take Care Clause. *Id.* The court found that Appellants failed to plead a Take Care Clause claim, and that reviewing such a claim would offend the consular nonreviewability doctrine. *See id.*

Appellants now appeal the District Court's judgment. However, they have abandoned their challenges to Pietersen's prior visa denials as foreclosed by the consular nonreviewability doctrine. The crux of their appeal is that the Manual's instruction to consular officers to base inadmissibility determinations on a "reason to believe" that an

applicant made a willful misrepresentation is contrary to the INA.

## II.  ANALYSIS

### A.  *Standard of Review*

We review a dismissal for failure to state a claim *de novo*. *Florio v. Gallaudet Univ.*, 119 F.4th 67, 73 (D.C. Cir. 2024). To defeat a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation omitted). Put differently, a complaint must "contain[] 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sanchez v. Off. of the State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022) (citation omitted).

In addition, under the APA, we set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's action is contrary to law "[i]n the absence of statutory authorization for its act." *Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 944 (D.C. Cir. 2024) (citations omitted). In other words, an agency cannot adopt regulations or policies "contrary to statute,  nor exercise powers not delegated to it by Congress." *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1450 (D.C. Cir. 1994).

### B.  *Standing*

As a threshold matter, the State Department argues that Appellants lack standing to advance their APA claim because their injury from the improper future application of the

Manual's guidance is speculative and hypothetical. We disagree.

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Jibril v. Mayorkas*, 101 F.4th 857, 867 (D.C. Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). This case concerns the injury-in-fact element. Where a plaintiff seeks declaratory or injunctive relief, he must demonstrate either that he "is suffering an ongoing injury" or that he "faces an immediate threat of injury." *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227 (D.C. Cir. 2024) (internal quotation marks and citation omitted).

Here, Brown is suffering an ongoing injury from the exclusion of his fiancée Pietersen from entering the United States. Importantly, the Supreme Court has recognized that an American citizen "who has 'a bona fide relationship with a particular person seeking to enter the country can legitimately claim concrete hardship if that person is excluded.'" *Trump*, 138 S. Ct. at 2416 (cleaned up) (citation omitted). Furthermore, Appellants claim that the State Department has and will continue to apply the Manual's guidance to Pietersen's visa applications; as such, it is apparent that Brown's injury is traceable to the challenged State Department guidance and that his injury is likely redressable through a declaration that the guidance is unlawful. That is so even if applying guidance consistent with the INA does not make it likely that the State Department will issue Pietersen a visa. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (noting that redressability is relaxed for concrete injuries stemming from procedural violations); *accord Ctr. for Biological Diversity v.*

*EPA*, 861 F.3d 174, 184 (D.C. Cir. 2017) ("Establishing causation in the context of a procedural injury requires a showing of two causal links: one connecting the omitted procedural step to some substantive government decision that may have been wrongly decided because of the lack of that procedural requirement and one connecting that substantive decision to the plaintiff's particularized injury." (internal quotation marks and alterations omitted)).

Because Brown has established standing and Pietersen seeks the same relief as him, we decline to consider whether Pietersen would separately have standing. *See J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) ("It is settled that in a case involving joined, individual plaintiffs bringing a shared claim seeking a single remedy, Article III's case-or-controversy requirement is satisfied if one plaintiff can establish injury and standing.").

Accordingly, Appellants clearly have standing to challenge the Manual's guidance as contrary to law.

## C. *APA Claim*

Turning to the merits, Appellants contend that the District Court erred in dismissing their APA claim as barred by the consular nonreviewability doctrine, and by holding that the Manual's guidance comports with the INA based on 8 U.S.C. § 1201(g). We agree with Appellants on the first point, but we will remand to allow the District Court to give further consideration to the second point.

To start, Appellants sufficiently raised a forward-looking APA challenge to the Manual guidance before the District Court. Specifically, Appellants' amended complaint alleges that the State Department violated the INA "by instructing its

consular officers that they could find[] an alien inadmissible based on such officer's mere 'reason to believe' that such alien had willfully misrepresented a material fact, when in fact the statute requires a consular officer to find that the willful misrepresentation had in fact occurred." Joint Appendix ("J.A.") 47. Tellingly, Appellants also sought a declaration that the Manual instruction is unlawful. These allegations readily suffice under the notice pleading standard of Federal Rule of Civil Procedure 8, which merely requires that a plaintiff's pleadings provide "the defendants fair notice of what the claim is and the grounds upon which it rests.'' *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) (citation omitted).

In this case, Appellants' complaint gave the State Department fair notice of their claim that the Manual's guidance is contrary to statute – a hallmark APA claim. Indeed, in Appellants' opposition to the State Department's motion to dismiss, they make clear that they are also seeking prospective relief regarding the State Department's future application of the guidance in future visa applications. The District Court addressed Appellants' APA claim and rejected it as meritless. *Pietersen*, 2024 WL 1239706, at *6. It is also noteworthy that, in their briefs to this court, Appellants explicitly invoked the APA and the State Department never doubted that Appellants' action includes a claim under the APA.

Furthermore, the consular nonreviewability doctrine does not foreclose Appellants' APA claim. To the contrary, it is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them "to assure that the executive departments abide by the legislatively mandated procedures." *See Int'l Union of Bricklayers*, 761 F.2d at 801 (citations omitted) (determining that the plaintiffs' claim that the Immigration and Naturalization Service's internal guidance

violated the INA was reviewable). As explained above, that is the case here. Rather than contesting particular visa determinations by a consular officer, Appellants confine their challenge to the lawfulness of the State Department policy. Therefore, we reverse the District Court's holding on this ground.

Moreover, as to the merits of Appellants' claim, the District Court's discussion of the issue is spare and the briefing before us does little to clarify the issue. In a nutshell, Appellants claim that the Manual's guidance impermissibly permits consular officers to deem an applicant inadmissible and permanently ineligible to receive a visa based on a "reason to believe" that the applicant made a willful misrepresentation. They point out that other provisions in 8 U.S.C. § 1182 expressly allow for inadmissibility determinations based on a "reason to believe" that a noncitizen has committed some action, while the willful misrepresentation provision that is at issue here omits such language. *Compare* 8 U.S.C. § 1182(a)(2)(C) (trafficking in controlled substances); *id.* § 1182(a)(2)(H) (trafficking in persons); *id.* § 1182(a)(2)(I) (money laundering), *with id.* § 1182(a)(6)(C)(i) (willfully misrepresenting a material fact).

On the other hand, the District Court and the State Department believe that the Manual's guidance is consistent with the INA because they view 8 U.S.C. § 1201(g) as containing a "reason to believe" standard which imposes that standard on all inadmissibility grounds in section 1182, including the contested willfully misrepresenting a material fact ground. We are skeptical of this view.

It is far from clear that section 1201(g) reaches as far as the District Court and the State Department suggest. First, by its terms, section 1201(g) does not provide a cross-cutting standard of proof applicable to all section 1182 grounds of

inadmissibility; instead, it appears merely to refer to a consular officer's "reason to believe" that a noncitizen already "is ineligible" under some subsections of 1182. *See* 8 U.S.C. § 1201(g) (stating that a consular officer cannot issue a visa to a noncitizen if "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . under section 1182 of this title"). Put differently, it seems to require a consular officer who suspects but has not yet verified that an inadmissibility determination has been made under section 1182(a) – and according to the standard of proof specified therein – to withhold a visa on that ground until the alleged basis of ineligibility can be confirmed.

Second, other inadmissibility provisions of section 1182 undermine the State Department's position because they provide distinct ways in which certain grounds of inadmissibility are to be established. *See, e.g.*, 8 U.S.C. § 1182(a)(1)(A)(iii) (providing that some health-related grounds of inadmissibility are to be determined by regulations prescribed by the Secretary of Health and Human Services in consultation with the Attorney General); *id.* § 1182(a)(2)(A)(i), (B) (providing that some criminal-related grounds of inadmissibility are to be determined by a criminal conviction).

Accordingly, it is plausible that section 1201(g) authorizes a consular officer to pause and withhold a visa based on a "reason to believe" that an applicant, for example, has a hazardous health condition; yet it defies logic to conclude – as the State Department's position suggests – that section 1201(g) allows that officer to determine section 1182(a)(1) inadmissibility on that ground when another standard is listed in that section. Indeed, the State Department fails to explain how its view of section 1201(g) as supplying an overarching standard for section 1182 inadmissibility harmonizes with section 1182's express provision of a "reason to believe"

standard to establish some grounds, different express standards to establish others, and no specification as to some grounds.

In sum, we are not confident that Congress authorized a consular officer unilaterally to deem a person to have made willful misrepresentations and thereby trigger permanent ineligibility for a visa based only on an implicit "reason to believe" standard – especially considering its decision to make that standard explicit for other categories of noncitizens posing elevated risks to national interests. Given the parties' unsatisfactory briefing on this issue, further evidence, argument, and deliberation are necessary before a final decision can be reached. We therefore vacate the District Court's alternative holding based on section 1201(g) and remand for further proceedings.

## D. *Take Care Clause Claim*

Finally, Appellants argue that the District Court's conception of the consular nonreviewability doctrine as barring their Take Care Clause claim violates the Take Care Clause because it insulates the Manual's application from review by the Secretary of State or the President. Notably, before the District Court, Appellants asserted that the State Department issued unlawful policies to its consular officers, which, in light of the INA's delegation of visa decisions to consular officers without review, violates the Take Care Clause.

We decline to address Appellants' Take Care Clause challenge. Because we have concluded that the consular nonreviewability doctrine does not preclude Appellants' APA claim about the Manual, there is no longer a basis for their Take Care Clause challenge to the District Court's reliance on the doctrine.

### III. CONCLUSION

For the reasons set forth above, we reverse the District Court's judgment and remand for further proceedings to determine whether the INA authorizes the challenged Manual provision.

*So ordered.*

PAN, *Circuit Judge*, dissenting:

Appellants Judith Pietersen and her American fiancé, Daniel Brown, filed a Complaint in the district court challenging the State Department's denial of Pietersen's K-1 nonimmigrant visa applications. Although the doctrine of consular nonreviewability generally shields visa denials from judicial review, appellants claimed to fall within an exception for denials that implicate the constitutional rights of an American citizen and were "made in bad faith, not facially legitimate, and not bona fide." First Am. Compl. ("Compl.") ¶ 25 (J.A. 31–32) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)); *see also Baan Rao Thai Rest. v. Pompeo,* 985 F.3d 1020, 1024 (D.C. Cir. 2021) ("Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise.").

The district court determined that the asserted exception did not apply and dismissed the case based on consular nonreviewability. My colleagues reverse that judgment and remand for the district court to consider whether certain policy guidance in the State Department's Foreign Affairs Manual (FAM) violates the Administrative Procedure Act (APA). I respectfully dissent because I believe that appellants have not preserved an APA claim for appeal. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("Absent exceptional circumstances, a party forfeits an argument by failing to press it in district court.").

Appellants' Complaint brought claims under (1) the Immigration and Nationality Act (INA), (2) "statutory and procedural due process protections," (3) the Mandamus Act, and (4) the Declaratory Judgment Act. Compl. ¶¶ 112–32 (J.A. 46–50). It asserted no claim under the APA. The Complaint referred to the FAM only to contend that the exception to

consular nonreviewability should be applied in Pietersen's case: The Prayer for Relief requested a declaration that the "inaccurate description of the 'willful misrepresentation' ground of inadmissibility in [the] Foreign Affairs Manual [is] *in bad faith, not bona fide or facially legitimate,* and therefore unlawful." *Id.* at 26 (J.A. 50) (emphasis added); *see Mandel*, 408 U.S. at 770. Moreover, the Complaint did not ask the court to set aside any agency policy but instead focused on case-specific relief for Ms. Pietersen. *Id.* at 26 (J.A. 50) (requesting "vacat[ur of] Ms. Pietersen's recent visa refusals," and an order directing the State Department to "redetermine her eligibility based on the proper statutory standards").

The government moved to dismiss the Complaint, asserting consular nonreviewability. In opposing the motion to dismiss, appellants mentioned the APA, but did not properly raise or brief an APA claim. Instead, appellants argued that the FAM guidance regarding "willful misrepresentation" was unlawful as applied to Ms. Pietersen's case, and that the court should award relief "as to State Department's future conduct as to Plaintiff in the context of future visa interviews." J.A. 105. The entirety of appellants' oblique reference to the APA was as follows: "Even if this Court finds that it cannot correct the error as to Plaintiff's prior denials, striking erroneous guidance and instructing the agency to comport with the law in the future is a quintessential APA function that cannot plausibly be barred by consular nonreviewability." J.A. 108. Appellants thus did not present the statutory argument thoughtfully analyzed by my colleagues *as an APA claim*.

The district court understood that the Complaint "contain[ed] no APA claim," and noted that despite appellants' passing reference to the APA in their briefing, the court would not "entertain [appellants'] APA challenge to the 'reason to believe' standard." *Pietersen v. Dep't of State*, No. 22-cv-

3544, 2024 WL 1239706, at *6 (D.D.C. Mar. 21, 2024). While the district court nonetheless opined, without the benefit of briefing, that "even if [appellants] had alleged such a claim," it would lack merit, the court's decision turned on its view that appellants did not plead an APA claim. *Id.* Although my colleagues suggest that the brief statements of the district court demonstrate that the Complaint gave the government fair notice of an APA challenge to the FAM policy, Maj. Op. at 14, appellants themselves acknowledge that they did not present an APA claim: Appellants ask us to remand to the district court "with instructions that that court allow Plaintiffs below *to amend their complaint to present their claims against the FAM instruction*." Pietersen Br. 30 (emphasis added); *see also id.* at 7 (stating that appellants brought suit under the INA and Due Process Clause, but "*[i]n later briefing*, the parties *raised issues* concerning the Take Care Clause and the Administrative Procedure Act" (emphasis added)).

Under the circumstances, I believe that appellants did not bring an APA claim in the district court and have conceded as much. Nor can I discern any "extraordinary circumstances" that prevented appellants' able counsel from properly making the claim. *Bernhardt*, 923 F.3d at 179. I therefore would hold that the APA issue is forfeited, and I would affirm the judgment of the district court based on the doctrine of consular nonreviewability. *See Baan Rao Thai Rest.*, 985 F.3d at 1024.